Ravinder S. Bhalla, Esq. (RB2870)
Florio Perrucci Steinhardt & Fader, L.L.C.
218 Rt. 17 North, Suite 400
Rochelle Park, NJ 07662
Attorneys for Plaintiffs Ramsey Abdallah,
Ghadeer Abbasi, and Riyanna Abdallah

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
RAMSEY ABDALLAH, individually and as        :
Guardian for RIYANNA ABDALLAH;              :
and GHADEER ABBASI, individually and as     :
Guardian for RIYANNA ABDALLAH               :
:
:
                               Plaintiffs   :    **COMPLAINT & JURY DEMAND**
:
v.                                          :
:
JETBLUE AIRWAYS CORPORATION, and            :
JOHN DOES 1-10                              :    *Electronically Filed*
:
                             Defendants.    :
_____:

Plaintiffs Ramsey Abdallah and Ghadeer Abbasi, individually and as guardians *ad litem* for Riyanna Abdallah complaining against all Defendants, hereby assert and state as follows:

### INTRODUCTION

1. This action seeks redress for an incident where Defendants removed Plaintiffs, United States citizens of the Islamic religious faith, from its airplane, on the false pretext that the Plaintiffs' 18-month-old infant was on a "No-Fly list". In actuality, Defendants engaged and/or participated in unlawful profiling against Plaintiffs on the basis of race, religion and/or national origin, in violation of federal and state statutory and common laws.

2. This action is a lawsuit brought under 42 U.S.C.A. 1981, *et seq.*, 42 U.S.C.A. 2000(d), 42 U.S.C. 2000(a), 49 U.S.C.A. § 40127(a), and the common law, alleging, among other things, discrimination based on race and/or religion in the making and enforcement of contracts under federal law, discrimination based on race and/or religion in a place of public accommodation under federal law, discrimination based on race and/or color of skin by a program receiving federal funding under federal law, false imprisonment under common law, discrimination based on race and/or religion in a place of public accommodation under New Jersey State law, and failure to train and supervise under the common law. This action is wholly based on the intentional, discriminatory, and reckless conduct of Jet Blue Corporation and Jet Blue Corporation Employees, John Does 1-10, (collectively, "Defendants") who acted without regard to the rights of the Plaintiffs.

## Jurisdiction

3. Jurisdiction is proper in the District Court of New Jersey under 28 U.S.C.A. §§ 1333 and 1343(a)(4), which provides for federal jurisdiction in matters, "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." This Court has pendant and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C.A. § 1367. Declaratory and injunctive relief is authorized by 28 U.S.C.A. §§ 1343(a)(4), 2201, and 2202.

## Venue

4. Under 28 USC § 1391, Venue is properly laid in any venue where any defendant resides. 28 USC § 1391(d) provides that corporate defendants reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 USC § 1391(d)

## THE PARTIES

5.      Plaintiff, Ramsey Abdallah, is a resident of the State of New Jersey. Mr. Abdallah is Plaintiff Ghadeer Abbasi's husband and Riyanna Abdallah's biological and custodial parent. Mr. Abdallah is a United States citizen of the Islamic religious faith who resides at 38 Porter Road, West Orange, New Jersey 07052. All Plaintiffs are of Arab racial descent.

6.      Plaintiff Ghadeer Abbasi is a resident of the State of New Jersey. Mrs. Abbasi is Plaintiff Ramsey Abdallah's wife and Riyanna Abdallah's biological and custodial parent. Mrs. Abbasi is a United States citizen and a visibly identifiable practitioner of the Islamic religious faith. Mrs. Abbasi wears a *hijab*, a traditional Islamic head covering. At the time of the actions in this complaint, Mrs. Abbasi was three (3) months pregnant. Mrs. Abdallah resides at 38 Porter Road, West Orange, New Jersey, 07052.

7.      Riyanna Abdallah is a minor child whose interests are represented by her parents, who are each Plaintiffs and who are Riyanna's Guardians pursuant to R. 46:26-2(a). Riyanna resides with the Plaintiffs at 38 Porter Road, West Orange, New Jersey, 07052. Riyanna Abdallah was approximately 18-months-old on the day of the events that led to this Complaint.

8.      Defendant JetBlue Corporation ("JetBlue") is an air carrier operating flights to 84 destinations in 24 states, and twelve (12) countries in the Caribbean, South America and Latin America. Defendant regularly conducts flights to and from Newark Liberty International Airport in this district.

9.      Defendants John Does 1-10 are fictitious names supplied for unknown corporate entities and or unknown individuals who engaged in the conduct identified herein.

**FACTS COMMON TO ALL COUNTS**

10. Plaintiffs are United States citizens residing in West Orange, New Jersey. They are practitioners of the Islamic religious faith. Plaintiff Ghadeer Abbasi wears a *hijab*, a traditional Islamic head covering.

11. On May 10, 2012, Plaintiffs were removed from their JetBlue flight ("the Flight") from Ft. Lauderdale/Hollywood Airport with service to Newark Liberty International Airport, along with an unrelated Muslim family.

12. The Plaintiffs had previously flown on JetBlue and other airlines, both domestically and internationally, along with their daughter, on multiple occasions. During these travels, aside from routine secondary screenings, none of the Plaintiffs had ever been subject to any form of extra scrutiny during the security check process. The Plaintiffs, on a return trip from Newark, encountered no security issues in flying with JetBlue to Ft. Lauderdale/Hollywood Airport ("the Airport") from Newark.

13. On or about May 10, 2012, and upon arrival at the Airport, each member of Plaintiffs had: a) checked in at the front departure desk and were provided boarding passes; b) were permitted to check-in their luggage, which was checked-in and placed on the plane the Plaintiffs were to board to Newark; c) passed through the departure gate checkpoint administered by the United States Transportation Security Administration ("TSA"); d) had their boarding passes scanned at the departure gate; and e) were permitted to be seated onboard the aircraft. At no point during the check-in, ticketing, baggage check-in, security check, or boarding process were the Plaintiffs set aside for any additional screening or otherwise advised that there was any security problem with their presence on the flight.

14. Thereafter, JetBlue employees engaged in a course of conduct against the Plaintiffs that was discriminatory, intentional, reckless, and demonstrated a complete ignorance of passenger rights under federal and state civil rights law and the common law.

15. First, JetBlue employees, without question, arbitrarily removed an unrelated Muslim family, later identified as the "Hussein family".

16. Thereafter, a Jet Blue Flight Attendant pointed out the Plaintiffs to a JetBlue Supervisor. The Supervisor approached the Plaintiffs and, in a voice audible to other passengers, falsely claimed that the Plaintiffs needed to leave the plane because the Transportation Security Administration (the "TSA" or "Federal Authorities") wanted to speak with the Plaintiffs.

17. Remarkably, the Supervisor stated to Plaintiffs they were being removed because their eighteen (18) month old baby, Riyanna, was on a "No-Fly-List" administered by the TSA.

18. By failing to handle this situation discreetly and in a manner that did not cause embarrassment to the Plaintiffs, other passengers on the flight began making comments about and to the Plaintiffs. These comments included words to the effect of "oh, they got you, good, I just wonder what they got you on" and "thank God they caught you." Similar comments were made by other passengers in rows ahead as the Plaintiffs disembarked. Such unwarranted humiliation against the Plaintiffs could have been avoided had the Supervisor conducted himself in a professional manner.

19. The Plaintiffs, who at all times were fearful of unwanted and undeserved criminal prosecution should they not comply with airline personnel and who were compliant with JetBlue employees at all times, then disembarked the airplane. As the Plaintiffs disembarked, Ramsey Abdallah asked the Supervisor for an explanation as to what was happening to the Plaintiffs.

The Supervisor falsely replied that JetBlue was following standard procedure and that their removal was prompted by the TSA, not JetBlue.

20. Once outside the departure gate, where they were met by armed Broward County Sheriff's officers, the Plaintiffs were further subjected to discriminatory conduct as they were kept standing in full visibility of other airline passengers, some of whom began to photograph the Plaintiffs with their camera phones, and were subjected to further humiliation.

21. The Plaintiffs at this time learned that the other family pulled off the flight was also Muslim couple with young child, the Hussein family.

22. The Plaintiffs remained outside the flight gate and complied with JetBlue employees for a period of about 45 minutes. At no point during this time period did JetBlue indicate, nor did the Plaintiffs believe, that they were free to leave, use the restroom, or were free to use the rest of the Airport's facilities. The Plaintiffs were falsely led to believe by JetBlue that they were under investigation by the TSA and they would be prosecuted if they did not cooperate with JetBlue employees.

23. After about 45 minutes, Defendants, who had summoned the TSA to the flight gate, determined that Riyanna was not on a "No-Fly list" and did not pose a security concern in any manner. Defendants then stated that the Plaintiffs could reboard the airplane.

24. By this point, Plaintiffs naturally felt too upset, embarrassed and humiliated to reboard the plane, and asked for their checked-in baggage back. Remarkably, JetBlue refused to remove the Plaintiffs' luggage and the luggage travelled on to Newark even though the Plaintiffs were not on the plane.

25. For two days following this incident, Plaintiff Ghadeer Abbasi, pregnant at the time, could not use the restroom without assistance because of the physical and emotional impact this incident placed upon her.

26. JetBlue thereafter made false statements of "clarification" to the media as to the facts surrounding this event. Left with no plausible explanation, JetBlue blamed a "computer glitch" for the incident. Upon information and belief, no such computer-glitch occurred. This explanation was proffered as a pre-text to cover up unlawful discrimination against Plaintiffs.

27. The TSA thereafter released a statement confirming JetBlue lied to Plaintiffs in their assertion that they were removed from the plane by the TSA. Specifically, the TSA was quoted in the Atlanta Journal-Constitution as stating:

> TSA did not flag this child as being on the No Fly list. TSA was called to the gate by the airline and after talking to the parents and confirming through our vetting system, TSA determined the airline had mistakenly indicated the child was on a government watchlist.

28. Defendants' conduct in removing a docile 18-month-old infant from an airplane was arbitrary, capricious, unreasonable, and had no rational basis in safety.

### COUNT ONE

### (DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS, 42 U.S.C. § 1981B, *ET SEQ.*)

29. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

30. Defendants purposefully and intentionally deprived the Plaintiffs from the enjoyment of the benefits, privileges, terms, and conditions of the Plaintiff's contractual relationship with JetBlue in violation of 42 U.S.C. § 1981(b), *et seq.*

31. Defendants are prohibited from imposing additional restrictions on protected minorities in order to receive service as doing so would alter the terms and conditions of the contractual relationship.

32. No similarly situated white passengers were, at the time of this incident, accused of being on the No-Fly list, removed from the airplane, or detained in any contrived extra security measures imposed by Defendants.

33. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT TWO

### (DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION 42 U.S.C.A. 2000A)

34. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

35. Defendants discriminated against the Plaintiffs in a place of public accommodation, by failing to provide full and equal enjoyment of services and privileges of use of the Ft. Lauderdale/Hollywood Airport, while the Plaintiffs were forced to stand at the flight gate and subjected to humiliation in violation of 42 U.S.C.A. 2000a, *et seq*.

36. Plaintiffs were left in open, public isolation at the airport gate based upon their race, ethnicity, religion and/or national origin.

37. Defendants refusal to remove the Plaintiffs' luggage from the plane, which was demanded while in the Airport terminal, was a discriminatory denial of service in a place of public accommodation.

38. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

39. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT THREE

### (DISCRIMINATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A. 2000D)

40. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

41. Upon information and belief, Defendant JetBlue is a recipient of federal funding.

42. Defendants did discriminate against the Plaintiffs in a manner actionable under Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d.

43. Plaintiffs were intentionally discriminated against on the basis of their religion and/or race when they were pointed out and subjected to humiliation and to unnecessary additional scrutiny by Defendants despite having passed through all normal security protocols.

44. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT FIVE

### (FALSE IMPRISONMENT)

45. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

46. Defendants did commit the tort of falsely imprisonment against the Plaintiffs under the common law.

47. From the time the Plaintiffs were made aware they were to disembark the plane until the time they would have been allowed to reboard the plane, the Plaintiffs were instructed

to stay within an area defined by Defendants and in fact the Plaintiffs did not, in fact, leave this area out of fear for their safety, harassment, and unwanted and unnecessary prosecution.

48. Defendants falsely stated that they were acting under TSA instruction and that their confinement to the area that defendants had instructed was under color of law.

49. The Plaintiffs at no point believed that they were free to leave and believed that should they try to leave they would face criminal prosecution and Defendants' use of force.

50. The Plaintiffs' perception was rational in light of Defendants' actions, Defendants' statements, the amount of security at any airport, in light of the terrible events of 9/11, and in light of common knowledge.

51. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT SIX

### (DISCRIMINATION PURSUANT TO 49 U.S.C.A. § 40127)

52. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

53. Defendants are an air carrier and, as an air carrier, are expressly prohibited from discriminating against a person in air transportation on the basis of race, color, national origin or religion, pursuant to 49 U.S.C. § 40127.

54. Defendants, engaging in conduct described herein, did discriminate against the Plaintiffs in violation of 49 U.S.C. § 40127.

55. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT NINE

### (FAILURE TO TRAIN AND SUPERVISE)

56. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

57. JetBlue is responsible for the training, instruction, and supervision of JetBlue agents, employees, and/or representatives who were at all times relevant acting within the scope of their employment.

58. Upon information and belief, JetBlue provided grossly inadequate training, instruction, and supervision to JetBlue's agents, employees, and/or representatives.

59. JetBlue should have known, trained, and instructed its employees, agents, and/or representatives to be aware that it is illegal profiling to consider a passenger's religion or ethnicity in determining whether a passenger is a security threat or engaged in a form of suspicious activity.

60. JetBlue's inadequate training, and supervision of its employees, agents, and/or representatives subjected Plaintiffs to unlawful discrimination on the basis of their race, ethnicity, religion, and/or national origin.

61. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a. Declare that the actions of Defendants described above constituted discrimination on the basis of race, religion, color, ethnicity, alienage, ancestry, and/or national origin in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. §

40127;

b. Enter a permanent injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000d;

c. Award Plaintiffs compensatory damages in an amount to be determined at trial to compensate them for being deprived of their right to travel as passengers in air transportation regardless of their perceived race, color, national origin, religion, ethnicity, and/or ancestry, including damages for fear, mental pain, inconvenience, humiliation, embarrassment, emotional distress, and financial injury, as provided under 42 U.S.C. § 1981, 42 U.S.C. 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. § 40127;

d. Award Plaintiffs punitive or exemplary damages against Defendants under the provisions of 42 U.S.C. § 1981, 42 U.S.C. 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. § 40127;

e. Award Plaintiffs reasonable attorney's fees and the costs incurred in this action pursuant to 42 U.S.C. § 1988;

g. Award Plaintiffs such other relief as the Court deems just and proper.

*/s/ Ravinder S. Bhalla*
Ravinder S. Bhalla, Esq.
Florio Perrucci Steinhardt & Fader, L.L.C.
218 Rt. 17 North, Suite 400
Rochelle Park, New Jersey 07662
Attorneys for Plaintiffs Ramsey Abdallah,
Ghadeer Abbasi, and Riyanna Abdallah

Dated: February 17, 2014

### C<small>ERTIFICATION</small> P<small>URSUANT TO</small> L. C<small>IV</small>. R. 11.2

I hereby certify to the best of my knowledge that the above-captioned action is not subject to any other action pending in any court or the subject of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated at this time. I know of no other party who should be jointed in this action.

                                               */s/ Ravinder S. Bhalla*
                                               Ravinder S. Bhalla, Esq.
                                               Florio Perrucci Steinhardt & Fader, L.L.C.
                                               218 Rt. 17 North, Suite 400
                                               Rochelle Park, New Jersey 07662
                                               Attorneys for Plaintiffs Ramsey Abdallah,
                                               Ghadeer Abbasi, and Riyanna Abdallah

Dated: February 17, 2014