**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMSEY ABDALLAH, individually and as Guardian for RIYANNA ABDALLAH; and GHADEER ABBASI, individually and as Guardian for RIYANNA ABDALLAH<br><br>Plaintiffs,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION, SABRE AIRLINE SOLUTIONS, AND JOHN DOES 1-10,<br><br>Defendants. | Civil Action No. 14-1050 (JLL) (JAD)<br><br>OPINION |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant Sabre Airline Solutions (" Sabre" or "Defendant")'s motion to dismiss Plaintiffs Ramsey Abdallah and Ghadeer Abbasi ("Plaintiffs")' First Amended Complaint ("FAC", ECF No. 20) pursuant to Federal Rule of Civil Procedure 16(b) and 12(b)(6). (ECF No. 39-40). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court **grants in part and denies in part** Defendants' motion.

## I. BACKGROUND[1]

As it writes only for the parties, the Court recites only the facts essential to the Court's disposition. Plaintiffs Ramsey Abdallah, Ghadeer Abbasi (his wife), and Riyanna Abdallah (their

---

[1] The Following is taken as true solely for the purpose of this motion.

daughter) are residents of New Jersey and "practitioners of the Islamic religious faith." FAC. ¶¶ 5-7, 11. Plaintiffs are all also of "Arab racial descent." Id. ¶¶ 5-7. Defendant JetBlue is an air carrier. Id. ¶ 8. Defendant Sabre is a provider of software and data solutions to approximately 225 airlines. Id. ¶ 9. Plaintiffs assert that Sabre was an "agent" of JetBlue at all times alleged in the Amended Complaint. Id.

On May 10, 2012, Plaintiffs boarded a flight operated by Defendant JetBlue from Fort Lauderdale/Hollywood Airport to Newark Liberty International. Id. ¶ 14. Prior to boarding, Plaintiffs had received boarding passes, checked luggage, and passed through TSA screening. Id After Plaintiffs had boarded, JetBlue employees removed an unrelated family, the Hussein family, from the flight. Id. ¶ 16. Plaintiffs later learned that the Hussein family was a Muslim couple with a young child. Id. ¶ 22. Subsequently, a JetBlue supervisor, in a voice audible to other passengers, advised Plaintiffs that they "needed to leave" the plane because TSA officials wanted to speak with them. Id. ¶ 17. The JetBlue supervisor advised them that they were being removed from the aircraft because Riyanna, then 18 months old, was on a no-fly list administered by the TSA. Id. ¶ 18. According to Plaintiffs, passengers on the flight began making comments about and to them – comments that, according to Plaintiffs, could have been avoided if the JetBlue supervisor "conducted himself in a professional manner." Id. ¶ 19.

As Plaintiffs disembarked, Plaintiff Ramsey Abdallah asked the JetBlue supervisor for an explanation and was told that "JetBlue was following standard procedure and that their removal was prompted by the TSA, not JetBlue." Id. ¶ 20. Outside the gate Plaintiffs were met by Broward County Sheriff's officers and "kept standing in full visibility of other airline passengers, some of whom began to photograph the Plaintiffs . . . , and were subjected to further humiliation." Id. ¶ 21. Plaintiffs "remained outside the flight gate and complied with JetBlue

employees for . . . about 45 minutes." *Id.* ¶ 23. "At no point during this time period did JetBlue indicate, nor did the Plaintiffs believe "they were free to leave the gate, use the restroom, or use other airport facilities." *Id.* TSA was summoned to the flight gate and Plaintiffs were told they were free to reboard the plane. *Id.* ¶ 24. Plaintiffs chose not to reboard, and JetBlue did not remove their luggage from the flight, so the luggage travelled to Newark without Plaintiffs. *Id.* ¶ 25. According to Plaintiffs, "JetBlue thereafter made false statements," in which it blamed a "computer glitch" for the incident. Plaintiffs assert "on information and belief" that no such computer glitch occurred and that the explanation was merely a pretext. *Id.* ¶ 27. TSA subsequently issued a statement saying it had not flagged Riyanna Abdallah as being on the no fly list. *Id.* ¶ 30. Plaintiffs allege that to the extent that Jetblue's improper and discriminatory conduct was a result of erroneous information contained on their software and computer systems, the error is also directly attributable to Sabre for any and all relevant software and data services they may have provided to Jetblue. *Id.* ¶¶ 28-29.

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the

guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

### III. DISCUSSION

#### A. Motions Before the Court

##### 1. Sabre's Motion to dismiss

Sabre contends that all claims against it should dismissed on the following grounds: (1) The claims against Sabre should be dismissed because they were filed in violation of federal rules of civil procedure and the pretrial scheduling order without good cause; (2) Plaintiffs have failed to state a claim under 42 U.S.C. § 1981; § 2000a; and § 2000d; (3) Plaintiffs have failed to state a claim for false imprisonment; Plaintiffs have failed to state a claim under 49 U.S.C. §40127; and (4) Plaintiffs have failed to claim for failure to train and supervise. Sabre also contends that JetBlue's cross claims should be dismissed on the following grounds: (1) JetBlue has failed to plead any factual basis for its crossclaims; (2) JetBlue is not entitled to indemnification for Plaintiff's Counts I-V; (3) JetBlue is not entitled to indemnification or contribution under state law; and (4) JetBlue is not entitled to contractual indemnification because it has not met a condition precedent and public policy precludes indemnification of intentional torts.

##### 2. JetBlue's Opposition

JetBlue opposes Sabre's motion on the following grounds: (1) JetBlue's crossclaims were timely; (2) JetBlue's crossclaims are viable; (3) Dismissal of Plaintiff's claims would not warrant dismissal of crossclaims; and (4) the crossclaims state a claim, but if more detail is required, the crossclaims should be dismissed without prejudice to repleading.

##### 3. Plaintiffs' Opposition

Plaintiff opposes Sabre's motion on the following grounds: (1) all claims against Sabre were filed in accordance with the Federal Rules of Civil Procedure and the preschedule order for good cause; (2) Plaintiffs have plead facts sufficient to support an inference that Sabre intentionally programmed the software to discriminate against persons of Arabic origin in accordance with 42 U.S.C. § 1981; (3) Plaintiffs have plead facts sufficient to support an inference that Sabre intentionally programmed its software to violate 42 U.S.C. § 2000A; (4) Sabre is a recipient of federal funds and thus Plaintiffs are entitled to seek relief under 42 U.S.C. § 2000D; (5) Sabre was, at the very least, indirectly responsible, by procurement, for the false imprisonment of the Plaintiffs and thus Plaintiffs are entitled to seek relief for false imprisonment; and (6) Plaintiffs have pled facts to sufficient to support a claim against Sabre for failure to train and/or supervise.

**B. 16(b)**

Under Federal Rule of Civil Procedure 16(b), the Court "must issue a scheduling order," Fed. R. Civ. P. 16(b)(1), which "must limit the time to join other parties [and] amend the pleadings." *Id.* 16(b)(3)(A). These mandatory deadlines "may be modified only for good cause and with the judge's consent." *Id.* 16(b)(4). As the Third Circuit has explained, Rule 16 "scheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986). Where the deadline for amending pleadings is included in a scheduling order, an amendment after the deadline must meet Rule 16's good cause standard regardless of whether the provisions of Rule 15 are also met. *Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121 (RBK/JS), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009). "[M]odifying a Court's scheduling order is only appropriate when a movant shows that deadlines

could not be met despite its diligence." *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854 (GEB), 2005 WL 1638136 at *5 (D.N.J. July 12, 2005) (citing Fed. R. Civ. P. 16). "In assessing diligence, courts ask whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." Smith v. *Honeywell Intern Inc.*, No. 10-03345, 2014 WL 301031, at *6 (D.N.J. Jan. 27, 2014 (internal quotation omitted).

Sabre argues that Plaintiffs' claims against Sabre were filed in violation of Federal Rule of Civil Procedure 16(b) because they are untimely under this Court's Pretrial Scheduling Order. Plaintiffs should have been aware of Sabre's involvement in the computer glitch for months before the deadline for amending pleadings or adding new parties, yet Plaintiffs neither filed their claims against Sabre nor sought an extension of that deadline before its expiration.

The Pretrial Scheduling Order in this case sets December 1, 2014 as the deadline for both amending pleadings and joining new parties. (ECF No. 15 ¶¶ 14-15). Plaintiffs filed a First Amended Complaint adding Sabre as a new party on December 19, 2014, and served their amended pleading on January 9, 2015. (ECF No. 32.) Sabre argues that Plaintiffs did not seek, much less obtain, judicial approval either for their amended pleading or for a modification of the Pretrial Scheduling Order. JetBlue, for its part, answered the Amended Complaint on January 23, 2015, then filed an Amended Answer to the First Amended Complaint with newly-asserted crossclaims against Sabre on February 13, 2015. Sabre contends that like Plaintiffs, JetBlue neither sought nor obtained judicial approval for its amended pleading.

Plaintiffs respond to Sabre's arguments by stating that they immediately sought to amend their complaint upon learning of Sabre's involvement in the events that led to the unlawful discriminatory conduct against them. Specifically, on September 4, 2014, counsel for Plaintiffs

and JetBlue attended a Rule 16 conference before Magistrate Judge Dickson, where the Initial Scheduling Order was discussed and set. At this conference, Plaintiffs state that the parties established a deadline of December 1, 2014 for any motion to add new parties. Plaintiff's counsel's attorney notes taken at the conference indicate Judge Dickson advised the parties at the Rule 16 Conference that he would be flexible with the date for adding new parties and would "move dates" to accommodate the parties if necessary. (Ravi Aff., ¶3-5). Plaintiffs state that they could not have met the court prescribed deadline despite due diligence. Prior to December 3, 2014, the Plaintiffs assert that they did not possess the knowledge necessary to file the motion to amend before the deadline expired. Furthermore, the Plaintiffs argue that they could not have, through reasonable diligence, identified Sabre because Plaintiffs had not yet received discovery from JetBlue regarding Sabre's involvement. (Ravi Aff., Exhibit B). More specifically, Plaintiffs state that they did not become aware of Sabre's involvement with this matter until December 3, 2014 via e-mail from JetBlue's legal counsel. (Ravi Aff., Exhibit B). About two weeks later, the Plaintiffs filed an Amended Complaint to assert their causes of action against Sabre.

The Court finds that Plaintiff's claims against Sabre were filed in accordance with the Federal Rules of Civil Procedure and the Pretrial Scheduling Order for good cause. "In assessing diligence, courts ask whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith v. Honeywell Intern., Inc.*, No. 10-CV-03345-ES-JAD, 2014 WL 301031, at *6 (D.N.J. Jan. 27, 2014) (internal quotation omitted). Here, Plaintiffs did not possess the knowledge necessary to file to motion to amend before the deadline expired. Moreover, Judge Dickson represented to the parties that the deadline to file the motion would be "flexible". By subsequently discovering the relevant information and filing the Amended Complaint only

two weeks later, Plaintiffs have demonstrated to the Court that they immediately sought to amend their complaint upon learning of Sabre's intimate involvement in the events that led to the unlawful discriminatory conduct against them. Therefore, the Court finds that the Plaintiffs First Amended Pleading was filed for good cause and in accordance with the Federal Rules of Civil Procedure.

**C. Count I**

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." *Doe v. Sizewise Rentals, LLC*, No. 09-3409 (JLL), 2010 WL 4861138, at *4 (D.N.J. Nov. 22, 2010) (quotations omitted), aff'd 530 Fed. App'x 171 (3d Cir. 2013). To sufficiently state a violation of § 1981, a plaintiff must plead a "specific factual basis . . . to create the inference of discrimination." *Frederick v. Southeastern Pennsylvania Transp. Auth.*, 892 F. Supp. 122, 125 (E.D. Pa. 1995) (citation omitted). "Conclusory allegations of generalized racial bias" are insufficient. *Flagg v. Control Data*, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992), aff'd, 998 F.2d 1002 (3d Cir. 1993). Similarly, "a plaintiff must do more than allege a series of unfortunate events and baldly allege that the defendants discriminated against him." *Abdullah v. Small Bus. Banking Dep't of the Bank of America*, No. 13–305, 2013 WL 1389755, at *2 (E.D. Pa. Apr. 5, 2013) (citing Gross v. R.T. Reynolds, Inc., 487 Fed. App'x 711, 716 (3d Cir. 2012)), aff'd, 532 Fed. App'x 89 (3d Cir. 2013).

Sabre argues that Plaintiffs' § 1981 claim fails because Plaintiffs have not pled any facts to show that Sabre engaged in intentional discrimination on the basis of race, as required under the statute. Sabre contends that its only involvement in the events consisted of a mere

"programming error," and Plaintiffs have alleged no facts indicating that this "error" was the product of any nefarious, discriminatory intent against people of Arab origin. Sabre asserts that if the Court were to accept Plaintiffs' conclusory factual allegations as true, Plaintiffs have failed to allege intentional racial discrimination by Sabre. There is no allegation that any Sabre employee had animus toward people of Arab origin – or even knew that Plaintiffs were of Arab origin.

Plaintiffs respond by stating that their § 1981 claim is valid because Sabre's software is programmed in a manner that discriminates against persons with names of Arab or Muslim origin. Plaintiffs state that the programming of Sabre's software to act in such a manner is intentional and thus meets "intent" requirement under the statute. Specifically, Plaintiffs contend that Sabre programmed its software to "flag" certain names for heightened and discriminatory security screenings. Plaintiffs note that Sabre's "error or glitch" did not flag any families with Anglo-Saxon last names, Hispanic last names or Asian last names, only Arabic last names. This, Plaintiffs assert, raises not only an "inference" of purposeful discrimination, but it is also concrete evidence of purposeful discrimination sufficient to meet the heightened pleading standards for such claims.

The Courts finds it inappropriate, at this stage of the litigation, to dismiss Count I. Plaintiffs have sufficiently alleged that they are members of a racial minority and that Sabre intended to discriminate on the basis of Defendant's race by flagging passengers who have a last name of Arab origin with the intention of treating Plaintiffs in a manner different than those passengers not of Arab descent. Here, there is no "obvious alternative explanation" for the facts alleged in Plaintiffs' Complaint. *Iqbal*, 556 U.S. at 682 (*quoting Twombly*, 550 U.S. at 567). While Plaintiffs may or may not be able to ascertain specifically how Sabre's software was programmed to discriminate against persons of Arabic origin, the facts pled by Plaintiffs are

sufficient to withstand a motion to dismiss and to allow them to pursue § 1981 claims against Sabre. Therefore, Sabre's motion to dismiss Count I is denied.

**D. Count II**

§ 2000a prohibits discrimination on the basis of, among other things, religion, in denying a person access to a place of public accommodation. 42 U.S.C. § 2000a. Sabre argues that Plaintiffs' claim against Sabre under section 2000a is a failed attempt to add Sabre to a cause of action that is based solely on conduct by JetBlue. Section 2000a bars discrimination in the use of public accommodations, in this case the Fort Lauderdale/Hollywood airport. Sabre contends that Plaintiffs' cause of action under § 2000a is based entirely on their treatment by JetBlue in the airport after being removed from their flight. As a result, Sabre asserts, Plaintiffs fail to allege any intentional discriminatory act by Sabre, much less one that affected Plaintiffs' use of the airport facilities. Sabre also states that Plaintiffs do not allege that they met the mandatory notice requirements of the statute.

Plaintiffs respond to Sabre's arguments by stating that their § 2000a claim is valid because Sabre's software is programmed to intentionally discriminate against names of Arab or Muslim origin. Furthermore, Plaintiffs assert that it was Sabre's software which triggered the unlawful detainment of the Plaintiffs. JetBlue's conduct in the place of public accommodation (the airport) was precipitated and triggered by Sabre's software which caused the removal of Arab and Muslim passengers. In addition, Plaintiffs contend that Sabre knew, when contracting with JetBlue, that its software would be utilized in a place of public accommodation. Finally, Plaintiffs state that while apportionment of liability is a question for a jury, Plaintiff should be permitted to prosecute their claims at this juncture that JetBlue and Sabre are jointly and severally liable.

The Court finds it inappropriate, at this stage of the litigation, to dismiss Count II of Plaintiffs' Complaint. As noted in the previous section, Plaintiffs have already demonstrated to the Court that they have alleged facts which demonstrate that they were deprived of equal use and enjoyment of a covered facility's services, and facts which demonstrate discriminatory intent by including evidence of the difference in treatment. Plaintiffs have sufficiently alleged that Sabre's software determines who is allowed to board aircraft and who can be subjected to heightened security scrutiny and did so in a discriminatory manner. Moreover, while aircrafts are not places of public accommodations, airports are. *Daniel v. Paul,* 395 U.S. 298, 307–308 (1969). Therefore, Plaintiffs have sufficiently alleged a cause of action under §2000a and Sabre's motion to dismiss Count II is denied.

**E. Count III**

Under Title VI, a plaintiff must demonstrate (1) membership in a minority; (2) intentional discrimination; and (3) receipt of federal funds by the defendant. 42 U.S.C. § 2000d. *Dasrath v. Cont'l Airlines, Inc.,* 467 F. Supp. 2d 431, 444-45 (D.N.J. 2006).

Sabre argues that Plaintiffs' third cause of action against Sabre is meritless because a claim under section 2000d can be sustained only against a recipient of federal funds and only if there are facts giving rise to a plausible inference of intentional discrimination. Sabre states that Plaintiffs' conclusory allegation upon information and belief that Sabre received federal funds is insufficient (and incorrect), and Plaintiffs have failed to connect the alleged computer glitch to discriminatory intent.

Plaintiffs respond by stating that Sabre has provided no counter evidence (i.e. certification) that it is not a recipient of federal funds. Plaintiffs contend that it is public knowledge that Sabre regularly deals with the TSA and other federal agencies in its business

activities. In the absence of a certification from Sabre, Plaintiffs argue that they can only ascertain through discovery the specific federal funding that requires Sabre to adhere to federal anti-discrimination laws.

The Court finds it inappropriate, at this stage of the litigation to dismiss Count III of Plaintiffs' Complaint. Plaintiffs have alleged that, based upon information and belief, Sabre is in receipt of federal funds. Moreover, Plaintiffs support their allegation by certifying to this Court that Sabre is a recipient of federal funds as set forth in a press release on Sabre's website. (Ravi Affidavit ¶ 9, Exhibit D)[2]. Therefore, as the Court has already found that Plaintiffs have sufficiently alleged the first two elements required for a claim to survive under §2000d, and now have sufficiently alleged that Sabre is in receipt of federal funds, Plaintiffs have sufficiently alleged a cause of action under §2000d. Thus, Sabre's motion to dismiss Count III is denied.

### F. Count IV

Sabre argues that Plaintiffs' false imprisonment cause of action is another claim that is entirely based on JetBlue's alleged actions and therefore fails to support a claim against Sabre. Sabre states that Florida law presumptively applies to Plaintiffs' false imprisonment claim because the alleged false imprisonment took place in Florida. Florida defines false imprisonment as "the unlawful restraint of a person against his will," requiring the "intent to cause a plaintiff to be completely restrained against his will." *Sutton v. Florida Dep't of Corr.*, No. 05-61712-CIV,

---

[2] When deciding a motion to dismiss, generally, "a court looks only to the facts alleged in the complaint and its attachments . . . ." *Jordan*, 20 F.3d at 1261. However, a court may also look to "a document integral to or explicitly relied on in the complaint" without converting the motion into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quotation marks and citation omitted). This exception to the general rule exists "so that [a] plaintiff cannot maintain a claim 'by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement [did not support the claim].'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

2007 WL 4287527, at *10 (S.D. Fla. Dec. 4, 2007). "To be civilly liable for false imprisonment, one must have personally and actively participated, either directly or by indirect procurement." *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. Dist. Ct. App. 2003) (*citing Johnson v. Weiner*, 19 So. 2d 699 (Fla. 1944)).

Plaintiffs respond to Sabre's contentions by arguing that the false imprisonment of the Plaintiffs would not have occurred but for Sabre's software which unlawfully and discriminatorily flagged Muslim and Arab passengers by being engineered to target names of Arabic origin. Further, Plaintiffs contend, Sabre knows that individuals who are flagged by their software will be detained by airline personnel and law enforcement. Thus, Plaintiffs assert that the false imprisonment charge, when viewed holistically, incorporates the conduct of Sabre and JetBlue and thus they must be held jointly and severally liable for harm caused to Plaintiffs.

The Court finds it inappropriate, at this stage of the litigation to dismiss Count IV of Plaintiffs Complaint. The facts, as stated by Plaintiffs in their First Amended Complaint, sufficiently allege Sabre's active participation in the Plaintiffs' false imprisonment. Specifically Plaintiffs have alleged that their false imprisonment would not have occurred but for Sabre's software which allegedly unlawfully and discriminatorily flagged Plaintiffs because the software was engineered to target names of Arabic origin. The Court agrees with Plaintiffs that Plaintiffs have sufficiently alleged that Sabre is at least liable on the basis of indirect procurement since the Plaintiffs were detained as a direct result of Sabre's unlawfully discriminatory software. Therefore, Plaintiffs have alleged false imprisonment under Florida Law sufficient to survive Sabre's motion to dismiss. Thus, Sabre's motion to dismiss Count IV of Plaintiffs' Complaint is denied.

**G. Count V**

Plaintiffs concede that 49 U.S.C. § 40127 does not apply to Sabre, thus Count V is dismissed as to Sabre.

**H. Count VI**

Sabre argues that Plaintiffs' cause of action for "failure to train and supervise" also fails to state a claim against Sabre. Sabre states that to the extent the claim relates to how Plaintiffs were treated by JetBlue personnel at the airport, the claim is misdirected against Sabre. Sabre further asserts that to the extent the claim is based on Sabre's alleged failure to train and supervise its employees to avoid computer glitches, Sabre's inability to meet this goal does not in any event result in the pleading of any of the elements of a cause of action.

Plaintiffs respond by stating that the Sabre software was engineered to flag passengers with names of Arab or Muslim origin. Plaintiff assert that at present, it is impossible for Plaintiffs to determine specifically how the software was developed to track certain names based on ethnicity or religion—however, Plaintiffs are entitled to pursue this claim through discovery to establish Sabre's failure to properly train and supervise employees to avoid programming the software to unlawfully discriminate against persons of Arabic origin.

Plaintiffs further contend that to the extent that JetBlue's improper and discriminatory conduct was the result of erroneous information contained on their software and computer systems, the error is also directly attributable to Sabre for any and all relevant software and data services they may have provided to JetBlue. Plaintiffs argue that to the extent that Plaintiff's damages were caused by a "programming error" in the software and data programming services of Sabre, such software and data programming services resulted in selective and unlawful discrimination against persons of Muslim or Arabic descent. Plaintiffs state that Defendants JetBlue and Sabre, as a contracting vendor and agent of JetBlue, are jointly and severally liable

to Plaintiffs for the deprivation of constitutionally protected civil rights caused by this purported programming error or glitch.

Here, both parties have offered the Court different elements that must be met in order for Plaintiffs' claim to survive. While Sabre initially contends that Plaintiffs are asserting Count VI under State Law, Plaintiffs cite to Second Circuit law for the appropriate pleading standard. The Court attempted to look to the actual Complaint itself, however unlike Plaintiff's other Counts, Count VI merely is titled "Failure to Train and Supervise". As the Court is unable to decipher under what standard Count VI is being brought under, the Court dismisses Count VI without prejudice.

## J. JetBlue's Counterclaims

Sabre contends that the Court should dismiss JetBlue's crossclaims against Sabre because they are untimely under Federal Rule of Civil Procedure 16(b) and the Court's September 3, 2014 Pretrial Scheduling Order (Docket No. 15). Sabre states that JetBlue has not tried to make the required showing of good cause for their untimely effort to join new claims into this action. Sabre also argues that JetBlue's crossclaims against Sabre should be dismissed because (1) JetBlue has failed to plead any facts to support them; (2) Plaintiffs' federal statutory claims do not permit contribution or indemnification as a matter of law; (3) JetBlue has not met the requirements for obtaining indemnification or contribution for Plaintiffs' common law claims; and (4) JetBlue is not entitled to contractual indemnification because it has not pleaded and cannot plead a condition precedent, nor can it be indemnified for intentional misconduct.

### 1. Rule 16(b)

Sabre states that JetBlue has known for years of Sabre's role in this incident. JetBlue answered the Amended Complaint on January 23, 2015, then filed an Amended Answer to the

First Amended Complaint with newly-asserted crossclaims against Sabre on February 13, 2015. Just as mentioned above regarding Plaintiffs, Sabre contends that JetBlue neither sought nor obtained judicial approval for its amended pleading. On August 27, 2014, prior to an initial conference set for September 3, 2014, JetBlue wrote to this Court about discovery issues. (ECF No. 12) (Jackson Dec. Ex. 3. JetBlue's letter refers to emails indicating that a problem with a computer system created erroneous notices about one of the Plaintiffs.) Sabre states that those emails included communications from 2012 between JetBlue and Sabre. Thus, Sabre argues that JetBlue was aware of Sabre's role in the events long before the Pretrial Scheduling Order was entered on September 3, 2014. Yet, JetBlue delayed in asserting a claim against Sabre for nearly six months – until February 13, 2015. Sabre asserts that JetBlue did not act diligently in asserting its crossclaims against Sabre.

JetBlue responds to Sabre's arguments by stating that JetBlue's crossclaims did not require a motion because they were filed "as a matter of course" under Fed. R. Civ. P. 15(a). JetBlue points to the Amended Complaint, which added Sabre as a Defendant and was filed on December 19, 2014. JetBlue states that it could not ignore this pleading, and, after an agreed upon extension of time (ECF No. 24), JetBlue filed its Answer to the Amended Complaint on January 23, 2015. JetBlue cites to Fed R. Civ. P. 15(a)(1)(A) for the proposition that it has the right to amend its pleading "as a matter of course" within 21 days. JetBlue contends that it then, within the 21 day period, on February 13, 2015, filed its Amended Answer and Crossclaims.

Moreover, JetBlue argues that the SSI review process that JetBlue was legally required to follow would constitute good cause under Rule 16. Specifically, JetBlue contends that it was legally required to wait for the TSA to review the relevant documents and information for SSI. JetBlue asserts that good cause can be established by the fact that JetBlue had to await the

completion of the TSA's SSI review before disclosing information and documents that may contain SSI, as well as JetBlue's desire to know what evidence it would be able to use before pleading crossclaims against Sabre.

The Court finds that JetBlue's crossclaims against Sabre were filed in accordance with the Federal Rules of Civil Procedure and the Pretrial Scheduling Order for good cause. "In assessing diligence, courts ask whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Smith v. Honeywell Intern., Inc.*, No. 10-03345-ES-JAD, 2014 WL 301031, at *6 (D.N.J. Jan. 27, 2014) (internal quotation omitted). Here, JetBlue has demonstrated to the Court that good cause can be established by the fact that JetBlue was legally required to await the completion of the TSA's SSI review before disclosing information and documents that may contain SSI, as well as the fact that JetBlue's desire to know what evidence it would be able to use before pleading crossclaims against Sabre was that evidence was not available to JetBlue before the completion of the review. Moreover, JetBlue filed its Amended Answer and Crossclaims on February 13, 2015, which is within the 21 day period under Fed R. Civ. P. 15(a)(1)(A), which gives JetBlue the right to amend its pleading "as a matter of course". Therefore, the Court finds that the Sabre's crossclaims were filed for good cause and in accordance with the Federal Rules of Civil Procedure.

### 2. Rule 8

Sabre first argues that JetBlue's crossclaims must be dismissed because JetBlue does not allege any factual support for them as required under Fed. R. Civ. P. 8. Specifically, Sabre contends that JetBlue has not alleged a single fact suggesting liability on the part of Sabre, much less why such liability would meet the legal requirements of indemnification or contribution.

Sabre states that JetBlue alleges only that if it is adjudged liable then it "demands contribution from codefendant Sabre," "demands indemnification from codefendant Sabre," and that Sabre is contractually obligated to indemnify JetBlue "for personal injury caused by Sabre's negligence or fault, and for claims arising out of Sabre's gross negligence or willful misconduct." Sabre asserts that these fact-free demands do not meet the pleading standards of Rule 8, and the crossclaims should be dismissed on that basis alone.

JetBlue responds by stating that the crossclaims, taken with the allegations of the Amended Complaint and JetBlue's denial of liability, state claims for indemnification and contribution and provide Sabre with clear notice of the claims against it. JetBlue cites to the Amended Complaint, which they state includes claims alleging that Plaintiffs experienced personal injuries because JetBlue acted negligently and/or intentionally and JetBlue's actions were caused by an error in the system that was negligently designed by Sabre.

Here, the Court finds that additional factual details are required in order for JetBlue crossclaims to survive dismissal. To state a claim under the New Jersey Tortfeasors Contribution Law, a plaintiff must allege that the party from whom contribution is sought is a joint tortfeasor. *Sattelberger v. Telep*, 14 N.J. 353, 364, 102 A.2d 577 (1954); *see also Zotta v. Otis Elevator Co.*, 64 N.J.Super. 344, 348-49, 165 A.2d 840 (App.Div.1961) ("The essence of the doctrine of contribution, by the New Jersey and majority view, is a common obligation to the person injured by the common tortious conduct."). Moreover, under New Jersey law, "[t]wo different situations can give rise to indemnification: either when a contract expressly provides for it, or when a special legal relationship creates an implied right of indemnity." *Ferriola v. Stanley Fastening Sys., L.P.*, No. 04-4043, 2007 WL 2261564, at *3 (D.N.J. Aug.1, 2007). If a plaintiff pursues the latter, "it is the existence of a special legal relationship sufficient to impose certain duties and a

subsequent breach of those duties that permits an implied indemnification." *Ruvolo v. United States Steel Corp.*, 133 N.J.Super. 362, 367, 336 A.2d 508 (Law Div.1975). In its cross-claims, JetBlue alleges, in total: then it "demands contribution from codefendant Sabre," (JetBlue Crossclaim for Contribution), "demands indemnification from codefendant Sabre," (JetBlue Crossclaim for Indemnification), and that Sabre is contractually obligated to indemnify JetBlue "for personal injury caused by Sabre's negligence or fault, and for claims arising out of Sabre's gross negligence or willful misconduct." JetBlue does not allege that Sabre is a joint tortfeasor and fails to plead the existence of a special legal relationship with Sabre to give rise to a duty to indemnify. Nor does JetBlue provide supporting "factual allegations" of any sort that "raise[ ] a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. However, because Because the Court finds that JetBlue may be able to assert facts to support their Crossclaims, the Court will grant an opportunity to amend these Crossclaims insofar as JetBlue can insert supporting facts as required by Fed R. Civ. P 8. Therefore, this Court will dismiss JetBlue's contribution and indemnification Crossclaims without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Sabre's motion to dismiss Plaintiffs' Amended Complaint and JetBlue's Crossclaims. Sabre's motion to dismiss Plaintiffs' Counts I, II, III, and IV is denied. Count V is dismissed with prejudice as to Sabre. Count VI is dismissed without prejudice. JetBlue's Crossclaims against Sabre are dismissed without prejudice to be refiled within 30 days of the filing of the Opinion and in accordance with Fed. R. Civ. P. 8. Plaintiffs may refile their Complaint in order to properly plead Count VI within 30 days of the filing of this Opinion.

An appropriate Order accompanies this Opinion.

DATED: 8 of June, 2014.

Jose L. Linares
U.S. District Judge